**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **DAWN PERLMUTTER,** *et al.* | | |
| | * | |
|     **Plaintiffs,** | * | |
| | | |
| **v.** | * | **Case No.: GJH-14-2566** |
| | | |
| **TRINA VERONE,** *et al.* | * | |
| | * | |
| **Defendants** | | |
| | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM OPINION**

Dawn Perlmutter and Thomas M. Bolick (collectively, "Plaintiffs") bring this case against Trina Varone, Jeffery Varone, Gary Altman, Altman & Associates, Rabbi Shalom Raichik, Scott Perlmutter, Isiah Leggett, Judge Steven Salant, Judge Terrence McGann, Mark S. Roseman, J. Steven McAuliffe III,[1] Hope Village, and Montgomery County, Maryland.[2] This case boils down to Dawn Perlmutter's belief that her sister, Trina Varone, acted wrongfully in the disbursement of their deceased mother's estate and convinced others, including the Maryland state courts, to join her scheme to obtain virtually all of her mother's estate and exclude Perlmutter from the inheritance. After failing to receive the results they wanted in state court, Plaintiffs are trying again before this Court. All Defendants have filed motions to dismiss. In addition, Plaintiffs have filed a motion for entry of default against Defendant Mark Roseman. A hearing on these motions is unnecessary. *See* Loc. R. 105.6 (Md.). For the reasons that follow,

---

[1] Miles and Stockbridge is also named in the complaint but only as McAuliffe's employer. *See* ECF No. 1 at 1.
[2] Plaintiffs also name ten John and Jayne [sic] Does. *See* ECF No. 1 at 2. The Court's analysis of Plaintiffs' claims applies equally to the named and unnamed Defendants.

the motions to dismiss are GRANTED and this case is DISMISSED with prejudice. Plaintiffs'
motion for entry of default is DENIED.

## I.    BACKGROUND

This case represents the latest in a series of lawsuits filed by Plaintiffs Dawn Perlmutter and Thomas Bolick related to the Estate of Joan Sutton. Joan Sutton died with a valid will on August 21, 2010. *See* ECF No. 7-13 at 3.[3] Trina Varone, Sutton's daughter, and Rabbi Shalom Raichik, Sutton's rabbi, filed a petition to open the estate on October 22, 2010 in the Montgomery County Orphans' Court. *See id.* Varone and Raichik presented a will dated November 26, 2008 and a codicil dated March 16, 2009. *See id.* The codicil expressly ratified and affirmed the will. *See id.* Pursuant to the will and codicil, Varone and Raichik were appointed to serve as the personal representatives of Sutton's estate. *See id.*

Dawn Perlmutter is also Sutton's daughter. *See id.* Perlmutter assigned, or attempted to assign, a portion of her interest in Sutton's estate to Thomas Bolick. *See id.* at 10. Plaintiffs challenged the validity of the will and codicil in the orphans' court, alleging that they were the product of fraud and forgery by Varone, Raichik, and potentially others. *See id.* at 3. After a hearing, Judge Steven G. Salant ruled against Plaintiffs. *See id.* at 4. Plaintiffs filed an appeal to the Maryland Court of Special Appeals, where they challenged Judge Salant's ruling, the jurisdiction of the orphans' court, and Judge Salant's failure to recuse himself from the case. *See id.* at 2. The Maryland Court of Special Appeals found that the orphans' court properly exercised jurisdiction as a probate court, that Judge Salant did not err in failing to disqualify himself, and that Plaintiffs' challenges to the will were properly dismissed. *See id.* at 3–9.

---

[3] *In re: the Estate of Joan D. Sutton*, Sept. Term, 2011, No. 1323 (Md. Court of Spec. App. Aug. 7, 2013) (unreported). All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

While the estate case was proceeding in the orphans' court, Plaintiffs filed a complaint in February 2011 in the Circuit Court for Montgomery County against Trina Varone, Jeffrey Varone, Rabbi Shalom Raichik, Gary Altman, Esq., Altman & Associates, Scott Perlmutter, Eugene Lawson, Esq., and Mark Roseman. *See* ECF No. 7-6 at 4–5.[4] Plaintiffs alleged that Defendants had embezzled from Sutton's estate and defrauded Plaintiffs of their interest in the estate. Specifically, the complaint alleged a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, tortious interference, unjust enrichment, deceit and fraud, breach of fiduciary duty, fraudulent transfer of assets, conspiracy, fraudulent taking of real estate and businesses, intentional infliction of emotional distress, and a request for an accounting. *See id.* at 4–17. The trial court ultimately granted Defendants' motions to dismiss and for summary judgment thereby dismissing the case. *See id.* at 2. The Court of Special Appeals later affirmed the trial court's decision. *See id.* at 22. After receiving the court's opinion, Plaintiffs then requested that the Court of Special Appeals reconsider its opinion, pointing to an affidavit from a woman claiming to be Sutton's personal assistant who stated that the Varones murdered Sutton by poison. *See* ECF No. 7-7. The request was denied. *See* ECF No. 7-8.

In the meantime, the estate proceeding in the orphans' court concluded and Plaintiffs appealed the final judgment. *See* ECF No. 7-15 at 5.[5] This time, Plaintiffs argued that the orphans' court erred in not granting sanctions against Varone and Raichik for fraud, not providing Plaintiffs with due process, sanctioning Plaintiff Bolick for continuing to file papers in the proceeding, dismissing Plaintiffs' exceptions to the accounting of the estate, and dismissing Plaintiffs' declaratory complaint against Varone and Raichik for fraud. *Id.* at 5–12. The

---

[4] *Dawn Perlmutter, et al. v. Tina [sic] Varone, et al.*, Sept. Term, 2011, No. 1518 (Md. Court Spec. App. May 20, 2013) (unreported).
[5] *In re: The Estate of Joan D. Sutton*, Sept. Term 2011, No. 2754 (Md. Court of Spec. App. Oct. 7, 2013) (unreported).

3

intermediate court affirmed the rulings of the orphans' court and specifically noted that the issues of alleged fraud had already been litigated in a separate lawsuit in the circuit court. *Id.* at 11–12.

Plaintiffs' federal complaint is largely, if not entirely, a rehash of the allegations presented in their previous state cases.[6] In this latest case, while the Plaintiffs have brought a few new causes of action and added Judge Salant, Judge McGann, Montgomery County, and J. Steven McAuliffe III to the list of defendants, the facts underlying the allegations remain the same. Plaintiffs are alleging that, through the adjudication of Sutton's estate, defendants conspired to violate their civil rights, retaliated against them for exercising their first amendment rights, engaged in fraud, violated the Commerce Clause and the RICO Act, were negligent, and were unjustly enriched. The result in this Court will be the same as it was in the previous fora in which these claims were raised.

## II.    STANDARD OF REVIEW

Defendants seek to have Plaintiffs' complaint dismissed based on a lack of subject matter jurisdiction as well as a failure to state a claim. "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Thus, "[t]he objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citations omitted). Because the district court resolves this issue at the Fed. R. Civ. Rule 12(b)(1) stage of the proceedings, the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction. *See Davis v. United States,* 597 F.3d 646, 649 (5th Cir. 2009).

---

[6] Before filing this complaint, on December 16, 2013, Plaintiffs filed a complaint in the United States District Court for the District of Columbia. *See* ECF No. 7 at 8; ECF No. 7-16. That complaint was dismissed based on improper venue. *See* ECF No. 7-17.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989),  legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

III.     DISCUSSION

A.  Judge Salant and Judge McGann

Defendants Judge Salant and Judge McGann argue that they are protected from Plaintiffs'

entire lawsuit by absolute judicial immunity. *See* ECF No. 16-1 at 5. The Court agrees. "[I]t is a

general principle of the highest importance to the proper administration of justice that a judicial

officer, in exercising the authority vested in him, shall be free to act upon his own convictions,

without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347

(1871).  Judicial immunity applies to any action taken in a judge's judicial capacity. Thus, the

only time judicial immunity does not apply is when the action was not taken in the judge's

judicial capacity or the action, though judicial in nature, was taken in complete absence of all

jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).  A judge is acting in his or her

judicial capacity when the function is one "normally performed by a judge" and when the parties

"dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

"[T]he scope of the judge's jurisdiction must be construed broadly . . . ." *King v. Myers*, 973 F.2d

354, 357 (4th Cir. 1992) (citations omitted).

Here, the complaint confirms that Judge Salant and Judge McGann were acting within

their respective judicial capacities and jurisdiction in presiding over the orphan's court and

circuit court proceedings. The Maryland Court of Special Appeals found the same. *See* ECF No.

7-13 at 3–9. Plaintiffs are directly challenging Judge Salant's rulings when they assert, for

example, that Judge Salant accepted a forged application for probate, *see* ECF No. 1 at ¶ 27,

dismissed Plaintiffs' petition, which denied them access to the courts, *see id.* at ¶ 29, and

permitted the Varones to commit fraud in the probate court, *see id.* at ¶ 38. Plaintiffs' challenges

to Judge McGann's rulings similarly attack his decisions from the bench. For example, they

6

allege that he improperly accepted an attorney's claims, *see id.* at ¶ 42, created new facts, *see id.* at ¶ 44, and refused to articulate his jurisdiction, *see id.* at ¶ 46. All of these challenges are to the judges' respective rulings made while they presided over the proceedings relating to Sutton's estate and Plaintiffs' circuit court case. Plaintiffs' belief that the judges made erroneous decisions is irrelevant. Even if the decisions were erroneous, if judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 12–13 (citing *Stump,* 435 U.S. at 356).  As such, the judges are absolutely immune from Plaintiffs' lawsuit, and they are DISMISSED from this action. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (finding judicial immunity is an immunity from suit, not just from ultimate assessment of damages); *see also Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 734–735 (1980) ("[J]udges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities.") (citations omitted); *Battle v. Whitehurst*, 831 F.Supp. 522, 526–27 (E.D. Va. 1993) (finding judge who sanctioned litigant was performing judicial action and enjoyed absolute immunity from claim for money damages).

### B.  Montgomery County and County Executive Isaiah Leggett

In addition to the judges, Plaintiffs name Montgomery County and its County Executive, Isiah Leggett,[7] as Defendants and bring a claim against them under 42 U.S.C. § 1983 for failure to train and supervise the judges of the Circuit Court and Orphans' Court for Montgomery County. *See* ECF No. 1 at ¶¶ 223–27. Specifically, in count II, Plaintiffs allege that Montgomery

---

[7] Mr. Leggett's name is not mentioned in the complaint aside from naming him as a defendant. Thus, the Court assumes Plaintiffs brought suit against him only as a representative of Montgomery County.

County allowed Judge McGann and Judge Salant to create new rules ad hoc and, therefore, did not adequately train and supervise the judges. *See id.* at ¶¶ 223–27.

Supervisory liability "arises from the obligation of a supervisory [ ] officer to insure that his subordinates act within the law." *Randall v. Prince George's County,* 302 F.3d 188, 203 (4th Cir. 2002). Here, there can be no supervisory liability because Montgomery County does not play a supervisory role over Judge Salant and Judge McGann. Indeed, the judges are not county employees; they are state employees. Md. Code, State Gov't Art. § 12-101(a)(11)-(a)(12). Thus, Montgomery County and its executive have no control over the judges of these courts, and Plaintiffs have failed to state a claim against Montgomery County or Leggett.

Even if Montgomery County did supervise the judges of the circuit and orphans' court, the doctrines of vicarious liability and respondeat superior are generally not applicable in 42 U.S.C. § 1983 actions. *See Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir. 1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978). To establish supervisory liability under § 1983, a plaintiff must adequately allege: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and 3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, Plaintiffs only allege that Montgomery County failed to adequately train and supervise its judges. *See* ECF No. 1 at ¶ 225. Without more, this conclusory statement does not adequately allege supervisory liability under § 1983.

8

For both of these reasons, Plaintiffs have failed to state a § 1983 claim against Montgomery County or Leggett and they are DISMISSED from this action.

### C.  Counts I, III, IV & VI (42 U.S.C. § 1983 Claims)

Plaintiffs bring counts I, III, IV & VI pursuant to 42 U.S.C. § 1983. In count I, Plaintiffs allege that Defendants acted under color of state law to deprive Plaintiffs of their constitutionally protected rights of liberty and property without due process of law. *See* ECF No. 1 at ¶¶ 216–22. They also allege that Defendants deprived them of their right to access the courts, to be free from harassment, and to receive just compensation for the taking of property. *See id.* In count III, Plaintiffs allege that Trina Varone, along with the other defendants, violated Plaintiffs' property rights by deception and fraud in connection with Sutton's estate, which led to the taking of Plaintiff Perlmutter's inheritance share without due process of law. *See id.* at ¶¶ 228–32. Specifically, Plaintiffs allege that Defendants stole assets from Sutton secretly and put them in trusts. *See id.* In count IV, Plaintiffs allege that Defendants obstructed Plaintiffs' access to the courts by ignoring all of Plaintiffs' motions and appeals.  *See id.* at ¶¶ 233–45. Finally, in count VI, Plaintiffs simply assert that all Defendants were part of a conspiracy to violate Plaintiffs' civil rights.  *See id.* at ¶¶ 252–61.

Plaintiffs' § 1983 claims appear to be alleging, in part, that the judgments of the orphans' court, circuit court, and Maryland Court of Special Appeals violated Plaintiffs' rights. This Court lacks subject matter jurisdiction to hear those arguments under the *Rooker-Feldman* doctrine. *Exxon-Mobile Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005) (explaining that the *Rooker–Feldman* doctrine forbids "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Among federal courts, it is only

the Supreme Court that has the power to reverse or modify state court judgments. *See id.* at 284–85. Thus, if Plaintiffs are "alleging that the adverse state-court judgment[s] [were] rendered in contravention of the Constitution" and are "ask[ing] the federal court to declare [them] 'null and void[,]'" this federal court would lack jurisdiction over the suit. *See id.*

Giving the complaint a liberal construction and assuming Plaintiffs are not alleging injury from the judgments of the state courts but from the process they received, 42 U.S.C. § 1983 serves as a vehicle for private parties to enforce their federal constitutional rights against state and local officials, municipalities, and any others who acted under color of state law. *See* 42 U.S.C. § 1983.  "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (citing *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer,* 334 U.S. 1, 13 (1948)) (internal quotation marks omitted). Here, the remaining Defendants—Trina Varone, Jeffery Varone, Gary Altman, Altman & Associates, Rabbi Shalom Raichik, Scott Perlmutter, Mark S. Roseman, J. Steven McAuliffe, III, and Hope Village—are private parties, not state actors, and Plaintiffs cannot state any § 1983 claim against them.[8] For these reasons, Plaintiffs' § 1983 claims, counts I, III, IV & VI, are DISMISSED.

---

[8] To be sure, private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983. *Dennis v. Sparks*, 449 U.S. 24, 29 (1980). To the extent Plaintiffs are alleging that Defendants acted under color of state law by conspiring with Judge Salant or Judge McGann, their complaint fails to plausibly state such a theory. Plaintiffs allege that "Defendants sought to have Judge Salant serve as judge , . . knowing that Varone had donated significant sums of money through religious organizations with direct ties . . . to Defendant Judge Salant." *See* ECF No. 1 at ¶ 25. In discussing Plaintiffs' motion to

**D. Count VII (fraud), counts IX–XI (RICO, accounting, unjust enrichment), & count XIII (fraudulent transfer of real property)**

    **i.    Res judicata**

Several Defendants assert that, aside from Plaintiffs' § 1983 claims, many of Plaintiffs' remaining claims—count VII (fraud), counts IX–XI (RICO, accounting, unjust enrichment), & count XIII (fraudulent transfer of real property)—have already been litigated and appealed in state court. *See* ECF No. 7. The Court agrees.

Federal courts must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986). Under the doctrine of res judicata, "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, but also as to matters that could have been litigated in the original suit." *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.,* 761 A.2d 899, 910 (Md. 2000) (citing *Lockett v. West,* 914 F.Supp. 1229 (D. Md. 1995)) (additional citations omitted).

The Circuit Court for Montgomery County, Maryland has already entered a judgment, which the Court of Special Appeals has affirmed, on Plaintiffs' counts for RICO,[9] unjust

---

disqualify Judge Salant, the Maryland Court of Special Appeals aptly explained that these "vague allegations . . . plainly would not provide a reasonable person with grounds to question Judge Salant's impartiality." *See* ECF No. 7-6 at 20. The Maryland intermediate appellate court explained that the allegations appeared to be purposefully vague and did not explain who Varone made donations to, how Judge Salant was related to those who received the donations, or whether Judge Salant even knew of the donations. *See id.* This Court likewise finds Plaintiffs' vague allegations fail to plausibly allege any conspiracy between the judges who presided over the probate and circuit court cases and the private parties on the other side of the aisle from Plaintiffs.

[9] Plaintiffs allege that Defendants violated RICO by changing Sutton's will because in so doing they engaged in undue influence, created a false impression on Sutton, promised performance

enrichment,[10] deceit and fraud,[11] accounting,[12] and fraudulent transfer of real property.[13] *See* ECF Nos. 7-6, 7-13, & 7-15. In the cases before the state courts, Plaintiffs brought the same claims, based on the same facts in their current complaint, against many of the same Defendants as they do in this case. *See id*; *see also* ECF No. 7-3. Thus, as to the defendants that were part of the state cases—Trina Varone, Jeffrey Varone, Rabbi Shalom Raichik, Gary Altman, Esq., Altman & Associates, Scott Perlmutter, and Mark Roseman—these claims have been fully litigated and are barred by the doctrine of res judicata.[14]  Given that the judges and Montgomery County have already been dismissed, J. Steven McAuliffe III is the only remaining Defendant on these counts. Thus, the Court must still address whether these counts state a claim for relief against McAuliffe.[15]

### ii.     RICO - McAuliffe

There is a four-year statute of limitations period for civil RICO actions. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997) (citing *Agency Holding v. Malley Duff and Assocs., Inc.*, 483 U.S. 143, 156 (1987)). Here, Plaintiffs allege that the action giving rise to their RICO claim

---

that they knew would not be performed, used mail to control property, and received property improperly. *See* ECF No. 1 at ¶¶ 283–91.

[10] Plaintiffs allege that they worked for Sutton and Defendants took their property because Plaintiffs were never paid for their work. *See* ECF No. 1 at ¶¶ 297–309.

[11] Plaintiffs allege that Defendants fraudulently created a new will for Sutton without consulting Sutton. Plaintiffs allege that this prejudiced them because Perlmutter's inheritance was affected by the new will. *See* ECF No. 1 at ¶¶ 266–79.

[12] Plaintiffs request an accounting of their property.  *See* ECF No. 1 at ¶¶ 292–96.

[13] Plaintiffs assert that the Varone family transferred "Hope Village" between 2008 and 2010 to delay Plaintiffs' collection of damages. *See* ECF No. 1 at ¶¶ 315–21.

[14] Again, if Plaintiffs are intending to allege that they were injured by the judgments of the orphans' court, circuit court, or Maryland Court of Special Appeals and wish to appeal those judgments, they have come to the wrong place. This Court lacks subject matter jurisdiction to hear such an appeal under the *Rooker-Feldman* doctrine. *See Exxon-Mobile Corp.*, 544 U.S. at 284.

[15] As with all discussions in this Opinion, this analysis also pertains to the ten John and Jayne [sic] Does named in the complaint.

occurred before Sutton's death in August 2010. *See* ECF No. 1 at ¶ 289. Plaintiffs filed their current complaint in August 2014 and have given no indication as to whether these events occurred less than four years before the complaint.

Assuming the complaint was filed within the statute of limitations, violation of 18 U.S.C. § 1962 requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). "Racketeering activity" is defined as any of a number of predicate criminal acts. *See* 18 U.S.C. § 1961(1). A pattern of racketeering requires at least two predicate acts. *See* 18 U.S.C. § 1961(5). To establish a pattern of racketeering activity, the plaintiff must establish that (1) the predicate acts are related, and (2) they pose a threat of continued criminal activity. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, Plaintiffs allege that Defendants created a false impression upon Sutton, obtained her consent through undue influence, failed to correct a false impression, and denied Sutton her rights. *See* ECF No. 1 at ¶ 289. These are the same allegations rejected by state courts against other defendants, and this Court agrees that these allegations do not qualify as predicate acts, s*ee* 18 U.S.C. § 1961(1), nor do they show that the acts pose a threat of continued criminal activity. Further, the allegations do not identify McAuliffe's involvement, if any, in these actions. Thus, Plaintiffs' complaint fails to state a claim for violation of the RICO Act, and this count is DISMISSED.

### iii.    Unjust enrichment - McAuliffe

Plaintiffs' unjust enrichment claim is time-barred. "A civil action shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code, Courts & Judicial Proceedings Article ("CJP") § 5-101. Here, Plaintiffs have not pointed to an alternative

limitations period that applies to their unjust enrichment claim. Because Plaintiff filed a claim for

unjust enrichment in Maryland state court in February 2011, based on the same facts as alleged

in this complaint, *see* ECF No. 7-6 at 4, Plaintiffs were aware of their cause of action more than

three years before they filed this suit in August 2014. Thus, this claim is time-barred.

Even if this claim were not time-barred, it would still be dismissed for failure to state a

claim. To successfully allege an unjust enrichment claim, Plaintiffs would need to plead facts

showing "[a] benefit conferred upon the defendant by the plaintiff," "[a]n appreciation or

knowledge by the defendant of the benefit," and "[t]he acceptance or retention by the defendant

of the benefit under such circumstances as to make it inequitable for the defendant to retain the

benefit without the payment of its value." *Berry & Gould, P.A. v. Berry,* 757 A.2d 108, 113 (Md.

2000) (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.,* 747 A.2d 600, 607 n. 7 (Md.

2000)). Here, Plaintiffs allege that they did consulting work for Sutton and that Defendants

benefitted from Plaintiffs' work. *See* ECF No. 1 at ¶¶ 299–304. However, Plaintiffs do not

explain how McAuliffe, who appears to have served as attorney for some of the Defendants in

the estate proceeding, *see* ECF No. 1 at ¶ 42, benefitted from Plaintiffs' work on Sutton's estate.

Indeed, Plaintiffs only mention McAuliffe a few times in their complaint. They allege that he

falsely asserted that Plaintiff Bolick had violated a court order, *see id.*, fraudulently asserted that

Plaintiffs' motions in the estate proceeding were "another caveat," *see id.* at ¶ 43, and threatened

Plaintiffs with a "bogus lawsuit" on March 4, 2011, *see id* at ¶ 100. These allegations do not state

a claim for unjust enrichment. This count is DISMISSED.

### iv.    Deceit and fraud - McAuliffe

Like the unjust enrichment claim, this claim is barred by the three-year statute of

limitations. *See* Md. Code, CJP § 5-101. Plaintiffs have not argued that an alternative limitations

period applies to this fraud claim, and they filed a claim for fraud in state court in February 2011

based on substantially the same facts asserted in their federal complaint. *See* ECF No. 7-6 at 4.

Because Plaintiffs were aware of their cause of action more than three years before they filed this

suit in August 2014, this claim is time-barred.

Regardless, Plaintiffs fail to state a claim for fraud. "To prove an action for civil fraud

based on affirmative misrepresentation, the plaintiff must show that (1) the defendant made a

false representation to the plaintiff, (2) the falsity of the representation was either known to the

defendant or the representation was made with reckless indifference to its truth, (3) the

misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on

the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable

injury as a result of the misrepresentation." *Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005).

Under Plaintiffs' fraud count, they allege that the Varone family and Gary Altman failed to

provide Sutton with documentation summarizing her assets or changes in the distribution of her

assets. *See* ECF No. 1 at ¶¶ 270–273. Plaintiffs also assert that the Varone family deprived

Perlmutter of her portion of Sutton's estate. *See id.* at ¶¶ 275–278. These allegations neither

implicate McAuliffe nor allege that Plaintiffs relied on any misrepresentations or omissions

made by McAuliffe. This count is DISMISSED.

### v.  Accounting - McAuliffe

"An accounting may be had where one party is under an obligation to pay money to

another based upon facts and records which are known and kept exclusively by the party to

whom the obligation is owed, or where there is a confidential or fiduciary relation between the

parties, and a duty rests upon the defendant to render an account." *P.V. Props., Inc. v. Rock*

*Creek Village Assocs. Ltd. Partnership*, 549 A.2d 403, 409 (Md. Ct. Spec. App. 1988) (citations

omitted). Plaintiffs ask for an accounting of the value of their property. *See* ECF No. 1 at ¶ 293. Plaintiffs have not alleged that McAuliffe was in possession of documents showing the value of Plaintiffs' property. Further, Plaintiffs do not allege that McAuliffe owed a fiduciary duty to Plaintiffs to render an account of the value of their property. Plaintiffs' request for an accounting against McAuliffe fails to state a claim and is DISMISSED.

### vi.    Fraudulent transfer

Plaintiffs name the property known as Hope Village as an additional Defendant for this claim and allege that the other Defendants transferred the property between 2008 and 2010 to prevent Plaintiffs from collecting it as damages. *See* ECF No. 1 at ¶¶ 318–19. Even if the transfer happened in 2010, this count would be barred by the three-year statute of limitations. *See* Md. Code, CJP § 5-101. Further, this count fails to state a plausible claim for relief as it fails to identify how the transfer was fraudulent or why Plaintiff was entitled to collect damages from the property. Plaintiffs' recital of the cause of action and statements that the transfer was fraudulent are not enough to state a claim. The Court will not accept unsupported legal allegations or legal conclusions. *See Revene*, 882 F.2d at 873; *Papasan*, 478 U.S. at 286. This count fails to state a claim and is DISMISSED.

### E.  Count VIII (violation of the Commerce Clause), count V (retaliation for the exercise of First Amendment rights), and count XII (negligence)

The Court turns last to Plaintiffs' claims that are not identical to those dismissed in state court— count VIII (violation of the Commerce Clause), count V (retaliation for the exercise of First Amendment Rights), and count XII (negligence).

### i.    Commerce Clause

Plaintiffs specifically state that the "probate court judgments" violate the commerce clause. *See* ECF No. 1 at ¶¶ 280–82. Thus, Plaintiffs are again asking this Court to redress an

injury caused by the actual judgment in state court. *See Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) ("the Rooker-Feldman Doctrine applies only when the loser in state court files suit in federal court seeking redress for an injury allegedly caused by the state court's decision itself."). This Court does not have appellate power to review state court judgments. As Plaintiffs' commerce clause claim invites the Court to "review and reverse unfavorable state-court judgments," it is DISMISSED for lack of subject matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 283.

### ii.      Retaliation for the exercise of First Amendment rights

Plaintiffs allege that Defendants threatened Plaintiffs with arrest and sanctions when Plaintiffs filed motions and pleadings in state court. *See* ECF No. 1 at ¶ 247. The First Amendment right to free speech includes the right to be free from retaliation by a public official for the exercise of free speech. *See ACLU v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). Private persons cannot retaliate against an individual for exercising First Amendment rights. To establish a violation of the First Amendment, plaintiff must show state action. *Hudgens v. NLRB,* 424 U.S. 507, 518–19 (1976). As the judges and county have been dismissed, and the only remaining Defendants are private parties and not state actors, this count is DISMISSED.

### iii.      Negligence

Finally, as to the claim for negligence, Plaintiffs allege that Defendants owed a duty of care to Plaintiffs and they breached that duty in committing the acts alleged in the other counts of Plaintiffs' complaint. *See* ECF No. 1 at ¶¶ 310–12. This is the extent of Plaintiffs' allegations of

negligence. Plaintiffs do not explain what duty Defendants owed, when the duty was breached, or how that duty was breached. "[P]laintiff's obligation to provide 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, this claim fails to state a claim and is DISMISSED.

### F. Plaintiffs' complaint as a whole

Plaintiffs' complaint as a whole simply fails to provide factual allegations that would lead the Court to find that Plaintiffs have stated any plausible claim for relief. Fed. R. Civ. P. 8(a)(2) provides that a claim "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Here, Plaintiffs' 83 page complaint with 321 paragraphs is dense and verbose with legal conclusions and vague allegations. Even after a thorough review of the complaint, the Court cannot discern without complete speculation what actionable offenses defendants may have committed or why Plaintiffs are entitled to more of Sutton's estate than they received. Given that Plaintiffs' factual allegations are devoid of reference to actual events, the Court finds no plausible claim for relief in Plaintiffs' complaint. For this reason and the reasons outlined above, Plaintiffs' complaint is DISMISSED.

### IV.    MOTION FOR DEFAULT

Plaintiffs have filed motions for entry of default against Defendants Gary Altman (ECF No. 27), Altman & Associates (ECF No. 28), and Mark S. Roseman (ECF No. 40) for failure to appeal, plead, or otherwise defend within the time required. *See* Fed. R. Civ. P. 12 (requiring defendant to serve an answer or motion within 21 days of service of the summons and complaint). Specifically, Defendants Altman and Altman & Associates were served on September 15, 2014 and both filed a motion to dismiss on October 16, 2014. *See* ECF Nos. 11 &

24. Defendant Roseman was allegedly served on October 6, 2014, but his motion to dismiss was not filed until November 11, 2014. *See* ECF Nos. 39 & 40.

As to Altman and Altman & Associates, the Court granted their motion for leave to file their motion to dismiss out of time. *See* ECF No. 31. Thus, Plaintiffs' motions for entry of default as to these Defendants are DENIED as moot. For the following reasons, Plaintiffs' motion for entry of default against Roseman is also DENIED.

Fed. R. Civ. P. 55 authorizes entry of default when a defendant "has failed to plead or otherwise defend" an action in accordance with the Federal Rules of Civil Procedure. "The rule makes no mention of default when a party has failed to 'timely' plead." *LaPosta v. Lyle*, 5:11CV177, 2012 WL 4464906 at * 2 (N.D.W.Va. Sept. 27, 2012). Indeed,

> . . . it is recognized that default judgments are inappropriate when a party untimely files an answer or other defensive pleading by only a few days. *Mitchell v. First Cent. Bank, Inc.,* No. 2:08cv6, 2008 U.S. Dist. LEXIS 68109, at *4, 2008 WL 4145451 (N.D. W .Va. Sept. 8, 2008) (denying entry of default judgment when defendant did not file an answer until ten days after time expired); *see Dow v. Jones,* 232 F.Supp.2d 491, 495 (D. Md. 2002) (denying entry of default when defendant filed a motion to dismiss three days late); *United States v. Mraz,* 274 F.Supp.2d 750, 756 (D. Md. 2003) (denying government's motion for default judgment when defendant did not file an answer until twenty-one days after time expired).

*United Community Bank v. McCarthy*, 1:10cv10-RJC-DLH, 2010 WL 2723726 at * 1 (W.D.N.C. July 9, 2010) (quotation marks omitted). Default judgments constitute a drastic remedy, and therefore, the Fourth Circuit has repeatedly admonished courts to adjudicate cases on their merits and resist entry of default judgment against a party. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 417 & n. 3 (4th Cir.2010). As Defendant Roseman has filed a motion to dismiss, albeit slightly untimely, default judgment is not an appropriate remedy and Plaintiffs' Motion for Entry of Default is DENIED.

19

V.      **CONCLUSION**

For the reasons explained above, Defendants' Motions to Dismiss are GRANTED. Plaintiffs' Motions for Entry of Default are DENIED. This Case is DISMISSED with prejudice.

A separate Order shall issue.


Dated: August 11, 2015                          _____/S/_____

                                                GEORGE J. HAZEL
                                                United States District Judge